**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 5, 2019[*]
Decided March 6, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 17-3320 | |
| MARK A. BYRD, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| v. | No. 16-cv-1241 |
| DANIEL HOBART, et al., *Defendants-Appellees.* | Sara Darrow, *Judge.* |

**O R D E R**

While working in the kitchen at Pontiac Correctional Center, Illinois inmate Mark Byrd observed a cockroach infestation, mice droppings on milk cartons, and other unsanitary conditions. Byrd sued several prison officials, alleging that these conditions constituted cruel and unusual punishment in violation of the Eighth Amendment. The district court entered summary judgment in the officials' favor, reasoning that Byrd had failed to show that the allegedly unconstitutional conditions caused him any actual

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

No. 17-3320                                                                                           Page  2

injury. However, the record reveals a genuine issue of material fact as to whether the defendants were deliberately indifference to a risk of *future* injury caused by contaminated food. We therefore vacate the judgment and remand to the district court for further proceedings.

   In November 2015, Byrd was assigned to work in the inmate kitchen. According to Byrd, the kitchen was filthy: he saw cockroaches "everywhere," including on serving trays; milk cartons were contaminated with mice droppings and urine; pieces of the floor were missing; the dishwasher did not seem to be working properly; and workers were given dirty smocks to wear. Concerned about the safety of eating food prepared in this kitchen, Byrd filed several grievances complaining about these conditions. The day after Byrd began working in the kitchen, a staff member submitted a work order requesting extermination services to address the cockroach infestation. The record does not reveal whether this work order led to a visit from the exterminator, but if it did, the treatment was ineffective; the problem persisted. Byrd refused to report for his fourth day of work and has not worked in the kitchen since.

   Byrd filed this suit against the Pontiac dietary manager and eight dietary supervisors alleging that each was deliberately indifferent to the kitchen's unsanitary conditions. He also sought an order that would prohibit prison officials from serving meals from the kitchen until the mice and roaches had been exterminated. An injunction, Byrd said, would "protect [him] from further being subjected to the substantial risk of harm by the spreading of diseases through the contamination of mice feces." As he put it, just "knowing that mice feces and roaches had contaminated your food … makes you wonder when you will become sick."

   Byrd and the defendants filed cross-motions for summary judgment. In his response to the defendants' motion, Byrd acknowledged that he "has not claimed he suffered any medical injury." Rather, he argued, the defendants violated his Eighth Amendment rights by their deliberate indifference to conditions that pose a substantial *risk* of harm, which exists daily "from just eating out of the inmate kitchen." Byrd submitted declarations from ten inmate workers as evidence of the kitchen's unsanitary conditions. One inmate described seeing rat droppings "on the majority of the food" and cockroaches "crawling [through] the bread" after rats chewed holes in the storage bags. Several others stated that they too saw mouse droppings on food—sometimes as often as "every day"—and that they routinely observed mice in the food bins. One inmate noted that "certain foods (e.g., breads, cookies, inmate food trays) hav[e] dead roaches in them," and that the dishwasher does not reach a high enough temperature to

No. 17-3320 Page 3

kill the bacteria on pots and pans. Byrd attached a letter from the Center for Disease Control and Prevention listing diseases transmitted by rodents and an article from an epidemiology journal discussing the dissemination of bacteria by cockroaches.

The district court granted the defendants' motion for summary judgment and denied Byrd's, reasoning that Byrd's failure to show that he suffered "an actual injury or harm" defeated his claim. The court understood Byrd's claim to be based not on a physical injury (since he conceded he had none) but on "[1] the fear or the psychological trauma that he allegedly suffered or [2] the potential harm that he has sustained as a result of being exposed to the conditions." Regarding the first theory, the court concluded that "his fear is not enough" in light of circuit precedent and "the Prison Litigation Reform Act's requirement that there must be a physical injury in order for a prisoner to recover for an emotional injury." As for the second theory, the court acknowledged that it had found cases holding that "an injury or harm is not required to survive summary judgment in a conditions of confinement claim," but ultimately disavowed those cases as inconsistent with circuit precedent.

On appeal, Byrd challenges the district court's entry of summary judgment for the defendants, a decision that we review de novo, construing all facts and reasonable inferences in favor of Byrd. *See Clarendon Nat'l. Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011). We agree with the district court that "genuine disputes of fact exist as to most of the material issues," including whether the defendants "possessed the knowledge required to hold them liable on Byrd's claim," and whether they took reasonable steps to address the conditions. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (applying deliberate-indifference standard to conditions-of-confinement claims under Eighth Amendment). We thus focus on whether Byrd offered sufficient proof that these conditions, viewed objectively, violate "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). In the context of this case, contemporary standards require that officials "provide inmates with 'nutritionally adequate food that is prepared and served under conditions [that] do not present an immediate danger to the health and well-being of the inmates who consume it.'" *Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)).

Byrd first argues that the defendants were not entitled to summary judgment "strictly because [he] suffered no physical injury," because an inmate can recover for purely psychological harm under the Eighth Amendment. Byrd is correct about the law. The Prison Litigation Reform Act requires a prisoner to prove physical injury to recover *compensatory* damages for emotional harm. *See Calhoun v. Detella*, 319 F.3d 936, 940

No. 17-3320 Page 4

(7th Cir. 2003) (discussing 42 U.S.C. § 1997e(e)). But an inmate may still obtain injunctive relief, nominal damages, and punitive damages based on psychological harm alone. *See id.* at 940–42. Nevertheless, Byrd's first argument is largely irrelevant; although Byrd hints at some psychological injury in his motion for injunctive relief, he elsewhere admits that the unsanitary conditions have yet to cause him harm of *any* kind. And the record is devoid of evidence of psychological harm.

Byrd also contends that, contrary to the district court's ruling, prison officials may be liable for creating an increased *risk* of future injury even without proof of present harm. The defendants argue that Byrd waived this argument on appeal by raising it for the first time in his reply brief. But we construe pro se appellate briefs liberally. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). This issue was fully briefed in the district court and Byrd sufficiently flagged it in his opening brief[1]—plus, the defendants sufficiently discerned the argument to respond to it—so we will address it.

Byrd is, again, correct about the law. "That the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling*, 509 U.S. at 33. We have repeatedly acknowledged that the Eighth Amendment protects prisoners from "an official's deliberate indifference to conditions posing an unreasonable risk of serious damage to the prisoner's future health." *Henderson v. Sheahan*, 196 F.3d 839, 846–47 (7th Cir. 1999); *see also Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012); *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011). To withstand summary judgment on this type of claim, an inmate must "show 'to a degree of reasonable medical certainty' that he actually faced an increased risk of injury." *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016) (quoting *Henderson*, 196 F.3d at 851).

Reviewing the record de novo and drawing all reasonable inferences in Byrd's favor, we conclude that Byrd has presented sufficient evidence to meet this standard. Unlike in other pest-infestation cases where we have found an inmate's allegations insufficient even to state a claim, *see, e.g., Smith v. Dart*, 803 F.3d at 312, Byrd attested to

---

[1] Byrd cites *Thomas v. Illinois*, 697 F.3d 612 (7th Cir. 2012) for the proposition that "a[n] injury need not be shown to recover damages." The suit in *Thomas* was dismissed on sovereign-immunity grounds, but the panel wrote at length "to correct the [district] judge's apparent assumption that creation of a mere hazard to health, as opposed to an actual impairment of health, can never be a harm sufficient to support an Eighth Amendment violation." 697 F.3d at 614.

No. 17-3320                                                                                                    Page 5

an extensive, persistent infestation and furnished other evidence of the same. He submitted declarations from ten inmate workers detailing the nature, severity, and duration of the infestations, among other unsanitary conditions. The record shows that the kitchen is consistently overrun with mice and cockroaches—which sometimes get on and into food that is then served to inmates—and that extermination services have not resolved the problem. Further, chunks of the floor are missing, and the functionality of the dishwasher is questionable. This court has found similar kitchen conditions to be "grossly inadequate" under the Eighth Amendment. *French*, 777 F.2d at 1255 (prison kitchen was "infested with mice and roaches"; floor was "uncleanable due to … missing tile"; cookware was covered with "uncleanable grime").

As evidence that these unsanitary conditions present an increased risk of injury, Byrd submitted a letter from the Center for Disease Control and Prevention describing the myriad diseases transmitted by rodents and an article from a medical journal discussing the role of cockroaches in disseminating bacteria. Citing these same sources, we have previously acknowledged that "cockroaches can transmit bacteria that aggravate asthma and cause other disease, and that inhaling microscopic particles of saliva, droppings, or urine from mice infected with hantavirus can infect a person with potentially fatal [disease]." *Thomas*, 697 F.3d at 615 (internal citations omitted).

The defendants argue that Byrd has not presented sufficient evidence because "no harm ever materialized from the conditions … over the course of the 15 years that he consumed food made in the Pontiac inmate kitchen." But the defendants misconstrue the nature of the claim. The focus is on the increased risk of future injury—here, a foodborne illness or worse—so the fact that no harm has yet materialized does not defeat it. And in this case, where inmates have observed mice droppings, mice, and cockroaches literally in and on the food, a reasonable jury could conclude that the risk of harm to Byrd (who eats this food daily) is both substantial and obvious.

Because Byrd presented sufficient evidence for a reasonable jury to find in his favor on his Eighth Amendment claim, we VACATE the district court's judgment and REMAND for further proceedings consistent with this order. Given the complexities of this case and the need for expert medical evidence to resolve Byrd's claims, we urge the district court to seriously consider recruiting counsel to assist him. *See Pruitt v. Mote*, 503 F.3d 647, 655–56 (7th Cir. 2007) (en banc). Byrd asks us to reassign this case to a different district judge on remand, but we see no reason to do so.

## UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**CERTIFIED COPY**
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

### FINAL JUDGMENT

March 6, 2019

Before:   MICHAEL S. KANNE, Circuit Judge
ILANA DIAMOND ROVNER, Circuit Judge
DAVID F. HAMILTON, Circuit Judge

| No. 17-3320 | MARK A. BYRD,<br>Plaintiff - Appellant<br><br>v.<br><br>DANIEL HOBART, et al.,<br>Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:16-cv-01241-SLD<br>Central District of Illinois<br>District Judge Sara Darrow ||

We **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this order. The above is in accordance with the decision of this court entered on this date. Costs to appellant.

form name: **c7_FinalJudgment**(form ID: **132**)