**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| MARK A. BYRD, | ) | |
| | ) | Case No. 16-CV-1241 |
| | ) | |
| Plaintiff, | ) | |
| | ) | The Honorable Colin Bruce |
| v. | ) | |
| | ) | |
| | ) | |
| DANIEL HOBART, ET AL. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**MOTION TO COMPEL**

NOW COMES Plaintiff Mark A. Byrd, by and through his undersigned counsel, and moves this Court for an order compelling more complete answers to Plaintiff's discovery requests, and in support thereof states as follows:

**INTRODUCTION**

As the court is aware, this matter presents a conditions of confinement claim involving allegations of insect and rodent infestation in the inmate kitchen at the Pontiac Correctional Center. *See Byrd v. Hobart,* Seventh Circuit order, No. 17-3320, attached hereto as Exhibit A, at p. 1.

Plaintiff issued his first Request to Produce on October 23, 2019, and Defendants responded on November 22, 2019. (See Production Response, attached hereto as Exhibit B.)

Plaintiff sent Defense Counsel a letter pursuant to Federal Rule of Procedure 37 on November 25, suggesting deficiencies in Defendants' Production response. (Exhibit C.)

On that same day, the parties' counsel engaged in a discussion by telephone to attempt to resolve their differences. Plaintiff's counsel followed up with a letter documenting their discussion. (Exhibit D.)

On December 16, in an effort to resolve their differences, the parties participated in a discovery conference with the Honorable Magistrate Judge Eric I. Long. Unfortunately, the conference was not successful.

## STANDARD

The scope of discovery is defined by Federal Rule of Civil Procedure as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Proc. 26(b)(1).

The key phrase in this definition—"relevant to the subject matter involved in the pending action"—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc v. Sanders*, 437 U.S. 340, 351 (1978) (*citing Hickman v. Taylor,* 329 U.S. 495, 501 (1947)). Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *Id.*

## ARGUMENT

Plaintiff submits that each of his requests is well within the scope of discovery as defined by Rule 26 (b)(1) and the cases interpreting it. Plaintiff notes additionally that

Defendant has failed to provide any evidence to establish how any of these requests would be unduly burdensome.

## Issues in Dispute

The primary issues requiring resolution are as follows:[1]

- **Timeline** (applicable to multiple requests): Plaintiff requested documents from 2010 to the present. Defendants assert that the relevant starting point is November 5, 2015, when Plaintiff began his 3-day stint working in the inmate kitchen. Plaintiff submits that, as declared by the Seventh Circuit, this is a conditions of confinement claim, and the relevant timeline for both liability and damages is far broader than Defendants' preferred three-day period when Plaintiff was working in the inmate kitchen.

- **Relevant areas of prison** (applicable to multiple requests): Plaintiff contends that documents and other materials involving the entire prison is discoverable, while Defendants assert that only materials involving the inmate kitchen (and possibly surrounding areas) are discoverable.

- **Request No. 4: Communications, e-mails, ESI.** Plaintiff requested communications involving one or more defendants relating to sanitation issues at Pontiac, using the following keywords: Any version (including but not limited to present, future, past tenses, singular and plural) of the following words: Infest, rodent, mice, cockroach, mouse, dropping, rat, insect, fecal, sanitation, dirt, clean, Byrd, Fallon. Plaintiff has since modified his request to eliminate the terms clean, dirty, Fallon, and sanitation. Thus, the requested terms are **Infest, rodent, mice, cockroach, mouse, dropping, rat, insect, fecal, and Byrd.**

  - o **Defendant's Response:** Defendant claims that the request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Defendants state further that "a search for electronically-stored information responsive to this request would involve a search of thousands of emails, phone records, mailings, etc. No such search has been conducted." Defendants claim that "the burden and expense of locating the requested documents vastly outweighs the potential benefit of such information. The documents that could potentially be responsive to this request are numerous and not relevant to any claim or defense asserted in the present litigation, and is not proportional to the needs of this case pursuant to Rule 26."

---

[1] Unless otherwise noted, quoted language is From Defendants' Answer to Plaintiff's First Requests for Production, attached hereto as Exhibit B.

- During the parties' Rule 37 conference, Defendants suggested a limiting factor such as pairing the requested keywords with "kitchen" or Dietary". Plaintiff suggests that this limitation is unnecessarily limiting, and notes that Defendants have failed to provide any evidence of how many hits Plaintiff's requested searches would generate, or any other evidence as to why the searches would be unduly burdensome.

- **Request No. 6: Grievances and complaints by inmates and IDOC employees related to infestation.** Plaintiff requested any and all grievances and complaints by inmates and/or staff involving sanitation and/or insect or rodent infestation issues at PCC, since 2010, including but not limited to the kitchens, storage facilities, and dining areas.

  - **Defendants' Response:** Defendants claim that the request "is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. Plaintiff is requesting information regarding nonparties and Plaintiff's Motion for Class Action was denied on July 26, 2016. [d/e 7/26/2016]. Plaintiff's complaint is regarding the conditions of the inmate kitchen at Pontiac, not the entire facility."

- **Request No. 7: Grievances and complaints by specific inmates (who we know have filed grievances on the issue of infestation) related to infestation.[2]** Plaintiff requested any and all grievances and complaints, including records relating to those grievances and/or complaints, filed by Mark Byrd, Jeremiah Fallon, Gregory Boatman, Bryain J. Young, Ommen Brown, Harvey Wright, Paul Smith, Raisheme Worlds, Art McCray, Stanley Miller, Michael Brent, Joe Sherrod, involving sanitation and/or infestation issues.

  - **Defendants' Response:** Defendants claim this request **"**is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's kitchen from November 15-17, 2015. Plaintiff is requesting information regarding nonparties; however, Plaintiff's Motion for Class Action was denied on July 26, 2016. [d/e 7/26/2016]. None of the requested inmates, other than Mark Byrd, are parties to the current litigation. Without waiving those objections, Defendants directs Plaintiff to Plaintiff's grievances that were previously disclosed as part of Defendants'

---

[2] Plaintiff has provided his copies of these grievances; this request seeks any additional grievances or related documentation by the same inmates. This request seeks a subset of Request No. 6.

Initial Disclosure, bates stamped as Byrd v. Hobart, et al. (16-1241) IDOC Document No.: 000029-000034."[3]

- o Plaintiff contends that evidence of complaints by others regarding the issue of infestation is directly relevant to the question of the existence, nature, and extent of such infestation, as well as notice to defendants, and would obviously assist Plaintiff in identifying witnesses. The request has nothing to do with any possible class action.

- **Request No. 8: Materials relating to an alleged incident on September 20, 2019, regarding an inmate named Jeremiah Fallon.** Plaintiff has reason to believe that Mr. Fallon was involved in an altercation with a kitchen supervisor concerning the presence of mouse droppings in a cereal box, and believes further that this altercation was captured on videotape.

  - o **Defendants' Response:** Defendants claim that the request "is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. Mr. Fallon is not party to this litigation and the incident in question occurred four years after Plaintiff worked in Pontiac's inmate kitchen; therefore, it is not relevant to the case at hand."

  - o Plaintiff submits that this request, like the others, is well within the scope of discovery, and could provide concrete proof of Plaintiff's allegations. Contrary to Defendants' claim that it is "overly broad in scope and time," it is extremely specific. Nor should there be any dispute that infestation-related events occurring as late as September of this year are absolutely relevant, let alone discoverable.

---

[3] During the parties' Rule 37 conference, Defense counsel withdrew his objection that this request is unduly burdensome.

## Rule 26(b)(1) factors

The factors enunciated in Rule 26(b)(1) that are relevant to this matter all favor production of the requested materials with minimal if any limitations.

To begin the analysis, it is necessary to take a step back and consider the first factor in Rule 26(b)(1)'s criteria governing discovery disputes: ***the importance of the issues at stake in the action.*** Plaintiff's allegations here are serious, troubling, and well-documented, with multiple signed statements by other inmates. If true, they have profound implications for the health of the Pontiac community, including inmates and staff as well. Plaintiff has alleged – and produced numerous corroborative statements regarding – a significant infestation of the food prepared and consumed by hundreds of inmates every day with insects, rodents, and rodent feces. These inmates interact every every day with Pontiac staff members.

In light of this factor, discovery requests aimed at exploring the existence, nature, extent and duration of the conditions alleged go to the heart of the undisputedly serious issues associated with the possibility of insect and rodent infestation.

The third issue raised by Rule 26(b)(1) is the parties' relative access to relevant information. Obviously, this is a one-way street. With few exceptions, Defendants have exclusive access to and control of the information requested.[4] While Defendants assert objections to producing the requested materials, that does not stop them from reviewing the materials themselves (or through their counsel), creating the potential for a serious knowledge gap between the parties. The only way to mitigate Plaintiff's natural disadvantage is to compel production of the requested materials.

---

[4] One exception is third party vendors, such as exterminators, which Plaintiff has subpoenaed wherever possible, and will continue to do so.

The fourth factor, the relative resources of the parties, obviously favors disclosure and production as well. Plaintiff is an indigent inmate who is being represented on a *pro bono* basis. Defendants have access to institutional resources such as Information Technology consultants (for the ESI being sought), experts, etc.

The fifth factor is the importance of discovery in resolving the issues. To put it plainly, discovery is the only way Plaintiff will have a chance to prove his case. Plaintiff and the other inmates who would support his allegations will always start out at a drastic disadvantage in any attempt to persuade a fact-finder of the veracity of his claims. These are convicted criminals. Defendants' denials, with nothing else, will have far more persuasive power by virtue of the fact that defendants are public employees and are presumably not convicted criminals. This is in addition to the burden of proof that any plaintiff must meet. Thus, discovery is crucial to corroborate Plaintiff's claims and give him any chance of prevailing in this matter.

The sixth factor – whether the burden or expense of the proposed discovery outweighs its likely benefit – is immaterial at this point, as Defendants have failed to provide any evidence at all to support their claim of undue burden.

For the foregoing reasons, Plaintiff Mark A. Byrd respectfully requests that this Court enter an order compelling Defendants to comply fully and completely with Plaintiff's Production Requests by a reasonable date.

Respectfully submitted,

*/s/ Jordan Marsh*

LAW OFFICE OF JORDAN MARSH
55 East Monroe Street, Suite 3800
Chicago, IL 60603
(312) 598-2828
jordan@jmarshlaw.com

## CERTIFICATE OF SERVICE

I, Jordan Marsh, an attorney, hereby certify that on December 17, 2019, I electronically filed the above document with the Court's CM/ECF system, which simultaneously sent an electronic copy of the same to all counsel of record.

/s/ *Jordan Marsh*

**MARK A. BYRD, Plaintiff-Appellant,**
**v.**
**DANIEL HOBART, et al., Defendants-Appellees.**

**No. 17-3320**

**United States Court of Appeals For the Seventh Circuit**

**Submitted March 5, 2019**[*]
**March 6, 2019**

**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

**Before** MICHAEL S. KANNE, *Circuit Judge*
ILANA DIAMOND ROVNER, *Circuit Judge*
DAVID F. HAMILTON, *Circuit Judge*

Appeal from the United States District Court for the Central District of Illinois.

No. 16-cv-1241

Sara Darrow, *Judge*.

**ORDER**

While working in the kitchen at Pontiac Correctional Center, Illinois inmate Mark Byrd observed a cockroach infestation, mice droppings on milk cartons, and other unsanitary conditions. Byrd sued several prison officials, alleging that these conditions constituted cruel and unusual punishment in violation of the Eighth Amendment. The district court entered summary judgment in the officials' favor, reasoning that Byrd had failed to show that the allegedly unconstitutional conditions caused him any actual

Page 2

injury. However, the record reveals a genuine issue of material fact as to whether the defendants were deliberately indifference to a risk of *future* injury caused by contaminated

food. We therefore vacate the judgment and remand to the district court for further proceedings.

In November 2015, Byrd was assigned to work in the inmate kitchen. According to Byrd, the kitchen was filthy: he saw cockroaches "everywhere," including on serving trays; milk cartons were contaminated with mice droppings and urine; pieces of the floor were missing; the dishwasher did not seem to be working properly; and workers were given dirty smocks to wear. Concerned about the safety of eating food prepared in this kitchen, Byrd filed several grievances complaining about these conditions. The day after Byrd began working in the kitchen, a staff member submitted a work order requesting extermination services to address the cockroach infestation. The record does not reveal whether this work order led to a visit from the exterminator, but if it did, the treatment was ineffective; the problem persisted. Byrd refused to report for his fourth day of work and has not worked in the kitchen since.

Byrd filed this suit against the Pontiac dietary manager and eight dietary supervisors alleging that each was deliberately indifferent to the kitchen's unsanitary conditions. He also sought an order that would prohibit prison officials from serving meals from the kitchen until the mice and roaches had been exterminated. An injunction, Byrd said, would "protect [him] from further being subjected to the substantial risk of harm by the spreading of diseases through the contamination of mice feces." As he put it, just "knowing that mice feces and roaches had contaminated your food ... makes you wonder when you will become sick."

Byrd and the defendants filed cross-motions for summary judgment. In his response to the defendants' motion, Byrd acknowledged that he "has not claimed he suffered any medical injury." Rather, he



Exhibit A

argued, the defendants violated his Eighth Amendment rights by their deliberate indifference to conditions that pose a substantial *risk* of harm, which exists daily "from just eating out of the inmate kitchen." Byrd submitted declarations from ten inmate workers as evidence of the kitchen's unsanitary conditions. One inmate described seeing rat droppings "on the majority of the food" and cockroaches "crawling [through] the bread" after rats chewed holes in the storage bags. Several others stated that they too saw mouse droppings on food—sometimes as often as "every day"—and that they routinely observed mice in the food bins. One inmate noted that "certain foods (e.g., breads, cookies, inmate food trays) hav[e] dead roaches in them," and that the dishwasher does not reach a high enough temperature to

Page 3

kill the bacteria on pots and pans. Byrd attached a letter from the Center for Disease Control and Prevention listing diseases transmitted by rodents and an article from an epidemiology journal discussing the dissemination of bacteria by cockroaches.

The district court granted the defendants' motion for summary judgment and denied Byrd's, reasoning that Byrd's failure to show that he suffered "an actual injury or harm" defeated his claim. The court understood Byrd's claim to be based not on a physical injury (since he conceded he had none) but on "[1] the fear or the psychological trauma that he allegedly suffered or [2] the potential harm that he has sustained as a result of being exposed to the conditions." Regarding the first theory, the court concluded that "his fear is not enough" in light of circuit precedent and "the Prison Litigation Reform Act's requirement that there must be a physical injury in order for a prisoner to recover for an emotional injury." As for the second theory, the court acknowledged that it had found cases holding that "an injury or harm is not

required to survive summary judgment in a conditions of confinement claim," but ultimately disavowed those cases as inconsistent with circuit precedent.

On appeal, Byrd challenges the district court's entry of summary judgment for the defendants, a decision that we review de novo, construing all facts and reasonable inferences in favor of Byrd. *See Clarendon Nat'l. Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011). We agree with the district court that "genuine disputes of fact exist as to most of the material issues," including whether the defendants "possessed the knowledge required to hold them liable on Byrd's claim," and whether they took reasonable steps to address the conditions. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (applying deliberate-indifference standard to conditions-of-confinement claims under Eighth Amendment). We thus focus on whether Byrd offered sufficient proof that these conditions, viewed objectively, violate "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). In the context of this case, contemporary standards require that officials "provide inmates with 'nutritionally adequate food that is prepared and served under conditions [that] do not present an immediate danger to the health and well-being of the inmates who consume it.'" *Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)).

Byrd first argues that the defendants were not entitled to summary judgment "strictly because [he] suffered no physical injury," because an inmate can recover for purely psychological harm under the Eighth Amendment. Byrd is correct about the law. The Prison Litigation Reform Act requires a prisoner to prove physical injury to recover *compensatory* damages for emotional harm. *See Calhoun v. Detella*, 319 F.3d 936, 940

Page 4



(7th Cir. 2003) (discussing 42 U.S.C. § 1997e(e)). But an inmate may still obtain injunctive relief, nominal damages, and punitive damages based on psychological harm alone. *See id.* at 940-42. Nevertheless, Byrd's first argument is largely irrelevant; although Byrd hints at some psychological injury in his motion for injunctive relief, he elsewhere admits that the unsanitary conditions have yet to cause him harm of *any* kind. And the record is devoid of evidence of psychological harm.

Byrd also contends that, contrary to the district court's ruling, prison officials may be liable for creating an increased *risk* of future injury even without proof of present harm. The defendants argue that Byrd waived this argument on appeal by raising it for the first time in his reply brief. But we construe pro se appellate briefs liberally. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). This issue was fully briefed in the district court and Byrd sufficiently flagged it in his opening brief—plus, the defendants sufficiently discerned the argument to respond to it—so we will address it.

Byrd is, again, correct about the law. "That the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling*, 509 U.S. at 33. We have repeatedly acknowledged that the Eighth Amendment protects prisoners from "an official's deliberate indifference to conditions posing an unreasonable risk of serious damage to the prisoner's future health." *Henderson v. Sheahan*, 196 F.3d 839, 846-47 (7th Cir. 1999); *see also Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012); *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011). To withstand summary judgment on this type of claim, an inmate must "show 'to a degree of reasonable medical certainty' that he actually faced an increased risk of injury." *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016) (quoting *Henderson*, 196 F.3d at 851).

Reviewing the record de novo and drawing all reasonable inferences in Byrd's favor, we conclude that Byrd has presented sufficient evidence to meet this standard. Unlike in other pest-infestation cases where we have found an inmate's allegations insufficient even to state a claim, *see, e.g.*, *Smith v. Dart*, 803 F.3d at 312, Byrd attested to

Page 5

an extensive, persistent infestation and furnished other evidence of the same. He submitted declarations from ten inmate workers detailing the nature, severity, and duration of the infestations, among other unsanitary conditions. The record shows that the kitchen is consistently overrun with mice and cockroaches—which sometimes get on and into food that is then served to inmates—and that extermination services have not resolved the problem. Further, chunks of the floor are missing, and the functionality of the dishwasher is questionable. This court has found similar kitchen conditions to be "grossly inadequate" under the Eighth Amendment. *French*, 777 F.2d at 1255 (prison kitchen was "infested with mice and roaches"; floor was "uncleanable due to ... missing tile"; cookware was covered with "uncleanable grime").

As evidence that these unsanitary conditions present an increased risk of injury, Byrd submitted a letter from the Center for Disease Control and Prevention describing the myriad diseases transmitted by rodents and an article from a medical journal discussing the role of cockroaches in disseminating bacteria. Citing these same sources, we have previously acknowledged that "cockroaches can transmit bacteria that aggravate asthma and cause other disease, and that inhaling microscopic particles of saliva, droppings, or urine from mice infected with hantavirus can infect a person with potentially fatal [disease]." *Thomas*, 697 F.3d at 615 (internal citations omitted).



The defendants argue that Byrd has not presented sufficient evidence because "no harm ever materialized from the conditions ... over the course of the 15 years that he consumed food made in the Pontiac inmate kitchen." But the defendants misconstrue the nature of the claim. The focus is on the increased risk of future injury—here, a foodborne illness or worse—so the fact that no harm has yet materialized does not defeat it. And in this case, where inmates have observed mice droppings, mice, and cockroaches literally in and on the food, a reasonable jury could conclude that the risk of harm to Byrd (who eats this food daily) is both substantial and obvious.

Because Byrd presented sufficient evidence for a reasonable jury to find in his favor on his Eighth Amendment claim, we VACATE the district court's judgment and REMAND for further proceedings consistent with this order. Given the complexities of this case and the need for expert medical evidence to resolve Byrd's claims, we urge the district court to seriously consider recruiting counsel to assist him. *See Pruitt v. Mote*, 503 F.3d 647, 655-56 (7th Cir. 2007) (en banc). Byrd asks us to reassign this case to a different district judge on remand, but we see no reason to do so.

--------

Footnotes:

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

[1] Byrd cites *Thomas v. Illinois*, 697 F.3d 612 (7th Cir. 2012) for the proposition that "a[n] injury need not be shown to recover damages." The suit in *Thomas* was dismissed on sovereign-immunity grounds, but the panel wrote at length "to correct the [district

judge's apparent assumption that creation of a mere hazard to health, as opposed to an actual impairment of health, can never be a harm sufficient to support an Eighth Amendment violation." 697 F.3d at 614.

--------



**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| MARK BYRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 16-CV-1241 |
| | ) | |
| | ) | Honorable Colin S. Bruce |
| | ) | |
| | ) | |
| DANIEL HOBART, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION**

Defendants, Daniel Hobart, John Klein, Dale Stokes, Mike Anderson, Henry Neu, Dion

Sullivan, Brenda Schott, and Steve Harbarger, by and through their attorney, Kwame Raoul,

Attorney General for Illinois, in response to Plaintiff's Request for Discovery states as follows:

1)  Any and all orders, memoranda, directives, communications, handbook sections, and/or other printed materials relative to sanitation at all IDOC facilities, including any such items specific to the Pontiac Correctional Center (hereinafter "PCC"). This request includes but is not limited to said items as they relate to inmate kitchens and cafeterias.

    **Objection: This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, vague, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges that he worked in Pontiac's inmate kitchen from November 15-17, 2015. Without waiving said objections, Defendants produce administrative directives, bates stamped as Byrd v. Hobart, et al. (16-1241) IDOC Document No.: 000035-000076.**

2)  Any and all reports, notes, logs, communications, and/or other documents relating to any inspections – by any entity – of the PCC from 2010 to present. This request includes safety and sanitation reports

    **Objection: This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, vague and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November**

**15-17, 2015. Without waiving said objections, Defendants produce safety and sanitation reports from November 2015 through November 2019, bates stamped as Byrd v. Hobart, et al. (16-1241) IDOC Document No.: 000077-001641.**

3)    Any and all records relating to service calls by exterminator services to the PCC Center inmate kitchen(s) from 2010 to present. This request includes but is not limited to invoices, records of requests for service, as well as records of service and results of any inspections. This request includes records relating to internal as well as external service providers or personnel.

**Objection: This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. Without waiving said objections, Plaintiff produces extermination invoices from November 2015 through September 2019, bates stamped as Byrd v. Hobart, et al. (16-1241) IDOC Document No.: 001642-001683.**

4)    Any and all records of communications involving one or more defendants relating to sanitation issues at the PCC from 2010 to present. This request includes notes, memoranda, e-mails, text messages, faxes, phone logs, etc. Keywords: Any version (including but not limited to present, future, past tenses, singular and plural) of the following words: Infest, rodent, mice, cockroach, mouse, dropping, rat, insect, fecal, sanitation, dirt, clean, Byrd, Fallon.

**Objection:   This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. A search for electronically-stored information responsive to this request would involve a search of thousands of emails, phone records, mailings, etc. No such search has been conducted. Furthermore, Defendants object on the basis that the burden and expense of locating the requested documents vastly outweighs the potential benefit of such information. The documents that could potentially be responsive to this request are numerous and not relevant to any claim or defense asserted in the present litigation, and is not proportional to the needs of this case pursuant to Rule 26.**

5)    Any and all documents – including but not limited to communications – relating to the design and construction of new a new kitchen and other facilities at the Pontiac Correctional Center (hereinafter "PCC"), including but not limited to all documents relating to the decision to construct the new facilities.

**Objection:   This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. In addition, allowing inmates access to documents detailing specifics of**

**prison design threatens the safety of inmates and staff and security of the institution.**

6) Any and all grievances and complaints by inmates and/or staff involving sanitation and/or insect or rodent infestation issues at PCC, since 2010, including but not limited to the kitchens, storage facilities, and dining areas.

**Objection: This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. Plaintiff is requesting information regarding nonparties and Plaintiff's Motion for Class Action was denied on July 26, 2016. [d/e 7/26/2016]. Plaintiff's complaint is regarding the conditions of the inmate kitchen at Pontiac, not the entire facility.**

7) Any and all grievances and complaints, including records relating to those grievances and/or complaints, filed by Mark Byrd, Jeremiah Fallon, Gregory Boatman, Bryain J. Young, Ommen Brown, Harvey Wright, Paul Smith, Raisheme Worlds, Art McCray, Stanley Miller, Michael Brent, Joe Sherrod, involving sanitation and/or infestation issues.

**Objection: This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's kitchen from November 15-17, 2015. Plaintiff is requesting information regarding nonparties; however, Plaintiff's Motion for Class Action was denied on July 26, 2016. [d/e 7/26/2016]. None of the requested inmates, other than Mark Byrd, are parties to the current litigation. Without waiving those objections, Defendants directs Plaintiff to Plaintiff's grievances that were previously disclosed as part of Defendants' Initial Disclosure, bates stamped as Byrd v. Hobart, et al. (16-1241) IDOC Document No.: 000029-000034.**

8) Any and all documents, records, incident reports, other types of reports, grievances, complaints, witness statements, notes, communications (including memoranda, e-mails, text messages, correspondence, etc.), and video and audio footage, regarding an incident that occurred on or around September 20, 2019, at or near the inmate kitchen, involving inmate Jeremiah Fallon. For purposes of this request, "Communications" includes but is not limited to communications to or from any member of the IDOC or PCC Internal Affairs Division, any member of the PCC Warden's office, inmate Jeremiah Fallon, and an IDOC employee named Wessel (on information and belief Jon Wessel).

**Objection: This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this**

**litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. Mr. Fallon is not party to this litigation and the incident in question occurred four years after Plaintiff worked in Pontiac's inmate kitchen; therefore, it is not relevant to the case at hand.**

9)      Any and all documents, records, and/or reports that relate in any way to the destruction, recycling, or any other action regarding any item requested in this request for production that is no longer in existence or accessible to Defendants.

**Defendants are not aware of any requested documents that have been destroyed. Defendants reserve the right to supplement their response.**

10)      Any and all policies and/or guidelines related to the retention periods of documents and records in the custody and/or possession of the Department.

**Objection: This request is overly broad in scope and time. Notwithstanding, Defendants produce the relevant administrative directive, bates stamped as Byrd v. Hobart, et al. (16-1241) IDOC Document No.: 001684-001686.**

11)      Organizational/chain of command chart for the PCC.

**Defendants produce Pontiac Organizational Chart, bates stamped as Byrd v. Hobart, et al. (16-1241) IDOC Document No.: 001687.**

12)      Any and all documents and other items that were consulted or otherwise used to answer Plaintiff's First Set of Interrogatories.

**Defendants will produce documents utilized in answering Plaintiff's First Set of Interrogatories with Defendants' Answer to Plaintiff's First Set of Interrogatories.**

13)      Any and all documents, records, and communications regarding any protest or complaint (formal or informal, written or oral) by IDOC employees or their union regarding sanitary conditions in the inmate kitchen;

**Objection: This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Without waiving said objections, Defendants do not have any responsive documents. Defendants reserve the right to supplement their response.**

14)      Any and all records, reports, communications, or other documents reflecting or suggesting any awareness by any named defendant of infestation and/or sanitation issues in the PCC;

**Objection: This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Without waiving said objections, Defendants have provided responsive safety and sanitation records and extermination regarding the condition of Pontiac's inmate kitchen pursuant to Requests 2 and 3.**

15) Any and all documents reflecting complaints by IDOC employees regarding sanitation and/or infestation issues at the PCC since 2010.

**Objection: This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome as it requests. Plaintiff's claims pertain to solely to the Pontiac kitchen, not the facility as a whole. Without waiving said objections, Defendants refer Plaintiff to their response to Request 13.**

Dated: November 22, 2019               Respectfully submitted,

Kwame Raoul
Attorney General                       By:    s/ John M. Catalano, Jr.
State of Illinois                             John M. Catalano, Jr.
*Counsel for Defendants*                      Assistant Attorney General
                                              Office of the Illinois Attorney General
                                              100 W. Randolph Street
                                              13th Floor
                                              Chicago, Illinois 60601
                                              Phone: (312) 814-3149
                                              E-Mail: jcatalano@atg.state.il.us

# LAW OFFICE OF JORDAN MARSH, LLC

(312) 401-5510
55 East Monroe Street
Suite Number 3800
Chicago, IL 60603
jordan@jmarshlaw.com

November 25, 2019

**VIA Electronic Mail**
John M. Catalano, Jr.
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street - 13th Floor
Chicago, Illinois 60601
JCatalano@atg.state.il.us

**Byrd v. Hobart**
**16 CV 1241**

Dear Counsel:

I am writing pursuant to FRCP 37(a)(1) with respect to Defendant's response Plaintiff's First Requests For Production. I believe your production is deficient in the following ways, and I look forward to setting up a time to discuss the issues raised below:

**REQUEST NO. 1**
1) Requests Any and all orders, memoranda, directives, communications, handbook sections, and/or other printed materials relative to sanitation at all IDOC facilities, including any such items specific to the Pontiac Correctional Center (hereinafter "PCC"). This request includes but is not limited to said items as they relate to inmate kitchens and cafeterias.

Defendants responded by objecting on the grounds that "[t]his request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, vague, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges that he worked in Pontiac's inmate kitchen from November 15-17, 2015."

Defendants cited this objection in response to requests 1-3, and 5-8. The objection seems to be animated by the inaccurate presumption that the scope of Plaintiff's claim is the three days he worked in the inmate kitchen. As the Seventh Circuit pointed out when discussing the harm he is alleging, "the risk of harm to Byrd (who eats this food daily) is both substantial and obvious." *Byrd v. Hobart,* (7th Cir. 2019), at p. 4. Even the Defendants agree that the scope of Plaintiff's damages exceeds the three days he spent in the kitchen. "The defendants argue that 'no harm ever materialized from the conditions...over the course of the 15 years that he has

**Exhibit C**

consumed food made in the Pontiac kitchen.'" *Id.* Moreover, documentation of infestation issues before November 2015 is still discoverable, and relevant to establish the extent of the infestation issues and notice to the defendants.

Thus, any objection based on the limited timeframe of November 15-17, 2015, is meritless, and I would ask you to reconsider any such objections.

### REQUEST NO. 2
2) Requests Any and all reports, notes, logs, communications, and/or other documents relating to any inspections – by any entity – of the PCC from 2010 to present. This request includes safety and sanitation reports.

Defendants responded by producing Safety and Sanitation reports from November 2015 through September 2019, Bates 77-1641.  While I appreciate the production, the request goes further than that.  It specifically refers to "any inspections – by any entity – of the PCC from 2010 through the present.  As an initial matter, I reiterate my request fro documents from 2010 to the present.  Secondly, I have reason to believe that other entities inspected the PCC in addition to the regular safety and sanitation inspections.  This includes, but is not limited to, the World Health Organization.  I renew my request for documentation of any and all inspections of the PCC from 2010 to the present.

### REQUEST NO.3
3) Requested any and all records relating to service calls by exterminator services to the PCC Center inmate kitchen(s) from 2010 to present. This request includes but is not limited to invoices, records of requests for service, as well as records of service and results of any inspections. This request includes records relating to internal as well as external service providers or personnel.

Defendants responded by producing extermination invoices from November 2015 through September 2019, bates stamped 1642-1683.  The request included not only invoices, but records of service and records of request for service, including the results of any inspections.  I reiterate that the timeframe you have unilaterally chosen is too narrow, and I renew my request for records from 2010 to present.  I also request that Defendants provide records of service calls and other documentation, rather than simply invoices.

### REQUEST NO.4
4) Requested any and all records of communications involving one or more defendants relating to sanitation issues at the PCC from 2010 to present. This request includes notes, memoranda, e-mails, text messages, faxes, phone logs, etc. Keywords: Any version (including but not limited to present, future, past tenses, singular and plural) of the following words: Infest, rodent, mice, cockroach, mouse, dropping, rat, insect, fecal, sanitation, dirt, clean, Byrd, Fallon.

Defendants flatly refused the request, stating that the request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. A search for electronically-stored information responsive to this request would involve a search of thousands of emails, phone records, mailings, etc. No such search has been conducted. Furthermore, Defendants object on

the basis that the burden and expense of locating the requested documents vastly outweighs the potential benefit of such information. The documents that could potentially be responsive to this request are numerous and not relevant to any claim or defense asserted in the present litigation, and is not proportional to the needs of this case pursuant to Rule 26.

I'm asking you to reconsider your objection, which does not include a good-faith basis for your stated belief that the request is unduly burdensome. You admit that Defendants conducted no search, and you fail to articulate any factual basis for your claim that such a search would be unduly burdensome or expensive. Under Rule 26(b)(2)(B), it is the Defendants' burden to demonstrate that the requested information is not reasonably accessible because of undue burden or cost. We provided imited keywords and limited individuals. Please reconsider your objection,a nd provide the requested information.

## REQUEST NO.5
5) Requests any and all documents – including but not limited to communications – relating to the design and construction of new a new kitchen and other facilities at the Pontiac Correctional Center (hereinafter "PCC"), including but not limited to all documents relating to the decision to construct the new facilities.

Defendants object, stating that the request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. In addition, allowing inmates access to documents detailing specifics of prison design threatens the safety of inmates and staff and security of the institution.

Defendants' blanket refusal to provide *any* of the requested documents is unreasonable. There is nothing in any of your objections that would impede your ability to produce documents relative to the decision to construct a new kitchen, including communications. Moreover, to the extent that you claim "allowing inmates access to documents detailing specifics of prison design threatens the safety of inmates and staff and security of the institution", you can produce the requested documents with an Attorneys' Eyes Only status. I will represent to you that my client would never see the designs, nor would I communicate anything about the designs to him. I would have no objection to a protective order to that effect. Please reconsider your refusal to provide any of the requested information or documents.

## REQUEST NO.6
6) Requests copies of any and all grievances and complaints by inmates and/or staff involving sanitation and/or insect or rodent infestation issues at PCC, since 2010, including but not limited to the kitchens, storage facilities, and dining areas.

Defendants object that the request "is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. Plaintiff is requesting information regarding nonparties and Plaintiff's Motion for Class Action was denied on July 26,

2016. [d/e 7/26/2016]. Plaintiff's complaint is regarding the conditions of the inmate kitchen at Pontiac, not the entire facility."

This request has nothing to do with whether our case is a class action. The requested material is relevant to the number and identity of inmates and staff who have complained about the conditions central to Plaintiff's cause of action. This, in turn, is relevant to 1) notice to Defendants, and 2) the nature and extent of the conditions alleged. The request is also relevant to the identity of potential witnesses to assist Plaintiff in proving his case. Please reconsider your objection and provide the requested documents. With respect to your objection that the complaint centers on the inmate kitchen rather than the entire facility, I think it is fairly obvious that infestation issues in other areas of the facility would impact the kitchen. The information is clearly discoverable. I ask that you reconsider your objection and comply with the request.

**REQUEST NO.7**
7) The same can be said about Request #7 as about #6. I incorporate the previous paragraph with respect to #7.

**REQUEST NO.8**
8) Requests any and all documents, records, incident reports, other types of reports, grievances, complaints, witness statements, notes, communications (including memoranda, e-mails, text messages, correspondence, etc.), and video and audio footage, regarding an incident that occurred on or around September 20, 2019, at or near the inmate kitchen, involving inmate Jeremiah Fallon. For purposes of this request, "Communications" includes but is not limited to communications to or from any member of the IDOC or PCC Internal Affairs Division, any member of the PCC Warden's office, inmate Jeremiah Fallon, and an IDOC employee named Wessel (on information and belief Jon Wessel).

Defendants objected and refused to comply with the request, stating that Mr. Fallon is not a party to this litigation, and that the incident occurred four years after Plaintiff worked in the kitchen. As stated above, the harm is continuing, and evidence that the conditions continued well past 2015 is extremely relevant, both to the harm to Plaintiff, to the notice to defendants, and to the nature and extent of the conditions alleged. Please provide the requested information.

**REQUEST NO.14**
14) Requests any and all records, reports, communications, or other documents reflecting or suggesting any awareness by any named defendant of infestation and/or sanitation issues in the PCC.

Defendants objected, stating that the request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Defendants provided safety and sanitation and extermination records regarding the condition of Pontiac's inmate kitchen pursuant to Requests 2 and 3.

This response is not responsive to the request. The request asked for all documents reflecting any awareness by any defendant of infestation issues at PCC. This is not only relevant, it is central to our case. Please provide the requested information.

**REQUEST NO.15**

15) Requests any and all documents reflecting complaints by IDOC employees regarding sanitation and/or infestation issues at the PCC since 2010.

Defendants object that the request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome as it requests. Plaintiff's claims pertain to solely to the Pontiac kitchen, not the facility as a whole. Defendants refer Plaintiff to their response to Request 13.

This is not responsive to the request. We are requesting any and all documents, whether they be complaints, memoranda, e-mails, reports, or other documents that reflect complaints by IDOC employees regarding the conditions alleged by Plaintiff. Please provide any and all responsive documents.

John, please contact me at your earliest convenience to discuss these matters. Thank you.

Sincerely yours,

Jordan Marsh
Attorney

# LAW OFFICE OF JORDAN MARSH, LLC

(312) 401-5510
55 East Monroe Street
Suite Number 3800
Chicago, IL 60603
jordan@jmarshlaw.com

November 25, 2019

**VIA Electronic Mail**
John M. Catalano, Jr.
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street - 13th Floor
Chicago, Illinois 60601
JCatalano@atg.state.il.us

## Byrd v. Hobart
### 16 CV 1241

Dear Counsel:

Thanks for reaching out so quickly after I sent the FRCP 37 letter. I wanted to get this follow-up letter drafted while our conversation was still fresh in my mind. Please let me know if you disagree with any of the following characterizations regarding our discussion.

With respect to the general issue of the timeline, you believe that the timeline should begin on November 5, 2015, when Mr. Byrd began working in the kitchen. I believe that is far too limiting. In fact, for purposes of discovery, the timeline should at a minimum begin 2-3 years before that. I believe I'm entitled to information about the possible infestation of the kitchen and the PCC in the years leading up to 2015. It is doubtful the problem began on the day Mr. Byrd began working in the kitchen, and ended three days later, when he left the kitchen.

Another somewhat global issue is whether discovery should be limited to the inmate kitchen, or whether it should cover the entire prison. Your position is that it should be limited to the kitchen. Yet the very nature of infestation of rodents and insects is that they move, so issues with other areas of the prison would be relevant to infestation of the kitchen. This is especially true for areas adjacent to the kitchen, but even areas further away are relevant because, as stated previously, rodents and insects are constantly moving. Thus, evidence of infestation in one area of the prison may make it more likely true that other areas also experienced infestation.

Moreover, I understand that there have been infestation issues in food storage areas that may not be in the kitchen proper, but certainly involve food and beverages the inmates consume. In summary, artificially limiting the inquiry to the kitchen itself is unrealistic and would prevent Mr. Byrd from evidence to which he is entitled under the rules of discovery.

1

**Exhibit D**

Request # 2 (reports of inspections): You agreed to provide what you call "cleaning sheets", and you will inquire about aan inspection done by the World Health Organization.

Request #3 (exterminator records): You indicated that the facility does not possess any records except those you already provided, which were invoices.

Request #4 (communications, e-mails, ESI): I agreed to limit my request by eliminating the following terms: clean, dirty, Byrd, Fallon, sanitation. I would actually like to take back my elimination of "Byrd" as a search term. In other words, I'd like "Byrd" to remain on the list. That's the one term you felt could reasonably be accommodated. You agreed to dig into the issue to find out how many hits these terms got.

Request #5 (new kitchen): I limited my request to documents, memoranda, communications limited to the question of why the new kitchen was planned and built. No blueprints or anything like that.

Request #6 (grievances by inmates/staff related to infestation): You indicated that no complaints were found by staff members. You're taking the position that searching for grievances by inmates is overly burdensome, and standing on that objection. You also believe that complaints by other inmates are not relevant to this case. As I stated, one of the elements we have to prove is the presence of infestation. It seems axiomatic that Mr. Byrd is entitled to discover any and all complaints by anyone, including inmates, regarding the issue of infestation.

Request #7 (grievances filed by 12 specific inmates): You agreed that production of these records would not be unduly burdensome, but stand on your objection regarding relevance, and claimed that we were requesting these materials for purposes of initiating a class action. I explained that we already have their names and affidavits, and that we wouldn't even need their names anyway, because Mr. Byrd could serve as the lead plaintiff in any class action. In any event, you're standing on the relevamce objection. We obviously disagree.

Request #8 (Jeremiah Fallon incident): You're standing on your relevance objection. We believe this is relevant to establish the existence of infestation, as well as the knowledge of supervisors.

Request #14 (documents reflecting awareness by Defendants of infestation): We agreed that this request is largely duplicative of No. 4. You stand on your objections to #4.

Request #15 (complaints by IDOC employees regarding infestation): Yous stated that after a search, there were no such documents found.

**Plaintiff's Second Production Request:**

Request #1 (Mr. Byrd's medical file): You stated this should not be too difficult to obtain.
Requests #2 and #3 (materials regarding photos and repair work done in inmate kitchen):
I agreed to limit both requests to the last 90 days. You stated that you'll look into the issue.

request #4 (materials regarding any attempt to remediate infestation issues): You stated you'll look to see if there's anything responsive that's not duplicative of materials responsive to other requests.

**Inspection and Photos of the prison:**

You stated that there's a procedure for this type of activity, in which I walk through the prison with an IDOC photographer, who photographs areas at my request, and shows me the photo at the same time, then sends them afterwards. You'll let me know if I need to file a motion.

**Defendants' Interrogatory Responses:**

You indicated that you could get me Daniel Hobart's Interrogatory responses within two weeks. The others can come later, as they'll mostly be adopting Mr. Hobart's responses.

John, thanks again for getting back to me so quickly on this. I look forward to receiving any further information on outstanding topics discussed herein. In the meantime, I'll begin drafting a motion to address the areas where we know we're at an impasse. I'd like to get written discovery concluded by the end of January if possible.

Have a good Thanksgiving.

Sincerely yours,

Jordan Marsh
Attorney