UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

MARK A. BYRD,

       **Plaintiff,**

v.

DANIEL HOBART et al.,

       **Defendants.**

Case No. 16-1241

**ORDER**

This matter is before the Court on the Motion to Compel (#91) filed by Plaintiff Mark A. Byrd ("Plaintiff"). Defendants Mike Anderson, Paul Griffith, Steve Harbarger, Daniel Hobart, John Klein, Henry Neu, Brenda Schott, Dale Stokes, and Dion Sullivan ("Defendants") filed a Response (#93) in opposition. For the reasons discussed below, Plaintiff's Motion to Compel (#91) is granted in part and denied in part.

**I.    Background**

Plaintiff, proceeding pro se, filed his Complaint on June 29, 2016, and an Amended Complaint on August 3, 2016. Plaintiff's Amended Complaint alleges that while working at the inmate kitchen at Pontiac Correctional Center ("Pontiac"), Plaintiff observed roaches crawling on tables, visible mouse droppings, and other unsanitary conditions. On September 6, 2017, the District Court granted Defendants' Motion for Summary Judgment and entered judgment in favor of Defendants.

On April 1, 2019, the Seventh Circuit vacated the Court's judgment and remanded the case for further proceedings. On remand, the Court reopened discovery and reset the discovery deadline to June 1, 2020. On August 5, 2019, the Court found an attorney willing to volunteer his time to represent Plaintiff.

On December 17, 2019, Plaintiff filed the instant motion, seeking to compel Defendants to produce documents responsive to Plaintiff's first Request to Produce. The

parties met and conferred pursuant to Federal Rule of Civil Procedure 37(a), but were unable to resolve their disputes. On December 16, 2019, the parties participated in an informal discovery conference with the Court, but were mostly unable to resolve the disputes.

On December 17, 2019, Plaintiff filed the instant Motion to Compel. The Motion first raises two overreaching issues that apply to multiple discovery requests: (1) the applicable timeframe of the discovery requests, and (2) the relevant areas of the prison. Second, the Motion addresses Defendants' responses to Requests to Produce 4, 6, 7, and 8.

## II.   Legal Standard

A district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes. *Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995). Rule 34 provides that a party may request, among other things, the production of documents that "constitute or contain matters within the scope of Rule 26(b)" and are in the custody or control of another party. Fed. R. Civ. P. 34(a).

Rule 26(b) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The district court exercises significant discretion in ruling on a motion to compel. *Gile v. United Airlines*, 95 F.3d 492, 495-96 (7th Cir. 1996). It may grant or deny the motion in whole or in part. *Id.* In exercising its discretion, the district court may deny discovery to protect a party from undue burden. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998).

**III.  Analysis**

    a.  **General Disputes**

First, the parties dispute the time period applicable to the discovery disputes. Specifically, Plaintiff requested documents from 2010 to the present. In contrast, Defendants agreed to turn over records only from November 15, 2015, until the date that the relevant inmate kitchen was no longer in use. Plaintiff worked at the inmate kitchen for three days, November 15-17, 2015. The parties discussed the relevant time period at length during the informal discovery call with the Court on December 16, 2019. During that call, the Court proposed that the parties agree to a time period of November 15, 2013, through the present. The parties tentatively agreed to this time period, with the condition that if it became burdensome, Defendants could file a motion for protective order. Similarly, if after reviewing the production, Plaintiff saw a need for additional years, he could file a motion to compel. Neither party recognizes this compromise in its pleading. Nor does either party address whether Defendants produced documents dating back to November 15, 2013. The Court directs the parties to comply with the compromise they reached during the informal conference call and only then should they take court action if needed.

Second, the parties dispute the areas of the prison that are relevant to Plaintiff's claims. Plaintiff maintains that documents and other materials involving the entire prison are discoverable. Defendant, on the other hand, argues that only documents pertaining to the particular inmate kitchen are relevant to Plaintiff's claims. As Defendants note, Pontiac is a very large facility, with 63 buildings on 37 square acres of land. Plaintiff's Complaint contains various allegations as to the condition of the inmate kitchen. The Complaint does not contain a single allegation regarding any other location in Pontiac.

Further, in its Order remanding the case, the Seventh Circuit found that this case focused on the increased risk of future harm caused to Plaintiff from eating food from the inmate kitchen. Seventh Circuit Order, #70, p. 5 ("[W]here inmates have observed mice droppings, mice, and cockroaches literally in and on the food, a reasonable jury could conclude that the risk of harm to Byrd (who eats this food daily) is both substantial and

obvious.") This case centers on the risk of harm caused by the condition of the inmate kitchen. Plaintiff has not shown how searching documents from the remainder of the facility is likely to lead to information relevant to his claims. Plaintiff's request to obtain documents from the entire prison is disproportionate to the needs of this case, as the case involves only the harm allegedly caused by the inmate kitchen. The Court finds that Defendants need only produce documents relevant to the inmate kitchen.

### b. Specific Disputes

#### i. Request Number 4

Plaintiff's Request Number 4 seeks:

> Any and all records of communications involving one or more defendants relating to sanitation issues at the PCC from 2010 to present. This request includes notes, memoranda, e-mails, text messages, faxes, phone logs, etc. Keywords: Any version (including but not limited to present, future, past tenses, singular and plural) of the following words: Infest, rodent, mice, cockroach, mouse, dropping, rat, insect, fecal, sanitation, dirt, clean, Byrd, Fallon.

Defendants' Answer to Plaintiff's First Requests for Production, #91, Exhibit B.

Plaintiff then modified his request to eliminate the terms clean, dirty, Fallon, and sanitation.

Defendants objected:

> This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. A search for electronically-stored information responsive to this request would involve a search of thousands of emails, phone records, mailings, etc. No such search has been conducted. Furthermore, Defendants object on the basis that the burden and expense of locating the requested documents vastly outweighs the potential benefit of such information. The documents that could potentially be responsive to this request are numerous and not relevant to any claim or defense asserted in the present litigation, and is not proportional to the needs of this case pursuant to Rule 26.

Defendants' Answer to Plaintiff's First Requests for Production, #91, Exhibit B.

Defendants propose adding modifiers to Plaintiff's selected terms to limit the number of responses. For example, Defendants propose searching "cockroach and

kitchen or dietary" instead of just "cockroach." Defendants also argue that the word "Byrd" alone may have numerous false hits as it is not an uncommon name. In the alternative, Defendants suggest that they search using Plaintiff's inmate number.

The Court already concluded that only documents relating to the inmate kitchen are relevant to Plaintiff's claims. Therefore, the Court grants Defendants' request to add modifiers to Plaintiff's terms to limit the responses to those that relate to the inmate kitchen. Defendants shall search for the terms "infest, rodent, mice, cockroach, mouse, dropping, rat, insect, fecal, sanitation," adding the modifier "and kitchen or dietary or food" to each term.

Defendants shall also search for the term "Byrd" without any modifier. Defendants argue that the name "Byrd" is common and will result in a number of irrelevant hits. The Court is not convinced that the name "Byrd" is so common as to cause a burdensome number of immaterial results.[1] Defendants suggest searching for Byrd's inmate number instead. This would likely exclude some relevant documents that may only have Byrd's name.

In sum, Plaintiff's Motion to Compel as to Request Number 4 is granted in part and denied in part. Defendants shall search for the terms "infest, rodent, mice, cockroach, mouse, dropping, rat, insect, fecal, sanitation," with the modifier "and kitchen or dietary or food" and search independently for the term "Byrd."

### ii. Request Number 6

Plaintiff's Request Number 6 seeks:

> Any and all grievances and complaints by inmates and/or staff involving sanitation and/or insect or rodent infestation issues at PCC, since 2010, including but not limited to the kitchens, storage facilities, and dining areas.

Defendants' Answer to Plaintiff's First Requests for Production, #91, Exhibit B.

Defendants objected:

---

[1] A search of inmates by last name on the IDOC website found 25 matches with the name "Byrd." By comparison, the name "Johnson" resulted in 972 matches.

> This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. Plaintiff is requesting information regarding nonparties and Plaintiff's Motion for Class Action was denied on July 26, 2016. [d/e 7/26/2016]. Plaintiff's complaint is regarding the conditions of the inmate kitchen at Pontiac, not the entire facility.

Defendants' Answer to Plaintiff's First Requests for Production, #91, Exhibit B.

Plaintiff's Motion does not provide an argument as to Request Number 6, but the Court presumes that Plaintiff seeks a full response.

Defendants first argue that Plaintiff's request for all grievances and complaints made by inmates is unduly burdensome and not proportionate to the needs of the case. Defendant's alleged burden is threefold: (1) the vast number of grievances; (2) when an inmate is transferred to another facility, his file is transferred with him; and (3) individual inmate files are not searchable by topic, resulting in a tedious search process.[2]

The Court agrees with Plaintiff that the grievances and complaints made by individual prisoners might contain relevant information as to the sanitation of the inmate kitchen. But, the burden and expense of having to review each individual file (many of which are no longer located at Pontiac) vastly outweighs any probative value these responses would contain. *See Rowe v. Finnan*, 2013 WL 2423800, at 2 (S.D. Ind. June 4, 2013) (denying the plaintiff's discovery request that would require the defendants to review each individual incident report at every corrections facility in the State, finding that the burden and expense would outweigh its likely benefits). Accordingly, Plaintiff's Motion as to all grievances and complaints made by inmates is denied.

Request Number 6 requests grievances and complaints made by employees of the prison. Defendant argues that these documents are irrelevant to Plaintiff's claims because

---

[2] Defendants detail the search process in their Response: "Producing grievances responsive to this would require an IDOC employee to: (1) identify every inmate incarcerated at Pontiac Correctional Center during this period; (2) see which inmates are no longer incarcerated at the facility; (3) order the Masterfile of inmates no longer at the facility; (4) review the handwritten documents in the Masterfile of every inmate in the facility during the requested time period to identify responsive documents; and (5) copy these documents; and (6) redact safety and security and other protected information within the documents."

6

the employees utilize a separate kitchen. As noted, the Court found that only documents relating to the specific inmate kitchen are relevant to this case. Therefore, the Court denies Plaintiff's Motion as it relates to grievances and complaints filed by Pontiac employees, who do not dine in the relevant inmate kitchen.

For this reason, Plaintiff's Motion to Compel responses to Request Number 6 is denied. The Court's ruling does not limit Plaintiff's ability to contact individual inmates and/or staff members and obtain affidavits. Plaintiff can then seek to obtain information about any grievances or complaints filed by those identified individuals.

### iii. Request 7

Plaintiff's Request Number 7 seeks:

> Any and all grievances and complaints, including records relating to those grievances and/or complaints, filed by Mark Byrd, Jeremiah Fallon, Gregory Boatman, Bryain J. Young, Ommen Brown, Harvey Wright, Paul Smith, Raisheme Worlds, Art McCray, Stanley Miller, Michael Brent, Joe Sherrod, involving sanitation and/or infestation issues.

Defendants' Answer to Plaintiff's First Requests for Production, #91, Exhibit B.

Defendants objected:

> This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's kitchen from November 15-17, 2015. Plaintiff is requesting information regarding nonparties; however, Plaintiff's Motion for Class Action was denied on July 26, 2016. [d/e 7/26/2016]. None of the requested inmates, other than Mark Byrd, are parties to the current litigation. Without waiving those objections, Defendants directs Plaintiff to Plaintiff's grievances that were previously disclosed as part of Defendants' Initial Disclosure, bates stamped as Byrd v. Hobart, et al. (16-1241) IDOC Document No.: 000029- 000034

Defendants' Answer to Plaintiff's First Requests for Production, #91, Exhibit B.

Request Number 7 is similar to Request Number 6, except that Number 7 identifies specific individuals from whom Plaintiff is requesting grievances and complaints. Request Number 7 notes that the individuals identified are known to have filed

grievances on the issue of infestation. Plaintiff has narrowly tailored this list to only eleven individuals other than himself. While Defendants note that these eleven individuals are not a party to this case, their grievances on infestation are relevant to the state of the inmate kitchen during Plaintiff's incarceration. Unlike Request Number 6, Plaintiff has narrowly tailored his request to limit the burden on Defendants while also increasing the likely probative value of these documents by identifying only individuals known to have filed relevant grievances.  For this reason, Plaintiff's Motion to Compel responses to Response Number 7 is granted as to the eleven named individuals other than Plaintiff. Defendant may limit their disclosure to grievances and complaints filed after November 15, 2013.

Request Number 7 also seeks grievances and complaints filed by Plaintiff. This request is denied as Defendants produced these documents in their initial disclosure.

### iv. Request Number 8

Plaintiff's Request Number 8 seeks:

Any and all documents, records, incident reports, other types of reports, grievances, complaints, witness statements, notes, communications (including memoranda, e-mails, text messages, correspondence, etc.), and video and audio footage, regarding an incident that occurred on or around September 20, 2019, at or near the inmate kitchen, involving inmate Jeremiah Fallon. For purposes of this request, "Communications" includes but is not limited to communications to or from any member of the IDOC or PCC Internal Affairs Division, any member of the PCC Warden's office, inmate Jeremiah Fallon, and an IDOC employee named Wessel (on information and belief Jon Wessel).

Defendants' Answer to Plaintiff's First Requests for Production, #91, Exhibit B.

Defendants objected:

This request is overly broad in scope and time, is cumulative, seeks the disclosure of information not relevant to any claims or defenses asserted in this litigation, and unduly burdensome. Plaintiff's complaint was filed on June 29, 2016 and only alleges he worked in Pontiac's inmate kitchen from November 15-17, 2015. Mr. Fallon is not party to this litigation and the incident in question occurred four years after Plaintiff worked in Pontiac's inmate kitchen; therefore, it is not relevant to the case at hand.

Defendants' Answer to Plaintiff's First Requests for Production, #91, Exhibit B.

Request Number 8 centers on an incident involving Jeremiah Fallon about four years after Plaintiff worked in the inmate kitchen. According to Plaintiff, the incident involved a dispute between Mr. Fallon and a kitchen supervisor about the presence of mouse droppings in a cereal box. Defendants argue this incident is irrelevant to Plaintiff's claims because it occurred four years after Plaintiff worked in the kitchen and involved individuals not party to this case. In its remand Order, the Seventh Circuit noted that this case centers on Plaintiff's claim for future harm. Plaintiff was still incarcerated at Pontiac at the time of the Fallon incident. Therefore, any incident involving the infestation in the inmate kitchen that occurred during Plaintiff's incarceration is relevant to Plaintiff's claim for future harm. The Court finds that Request Number 8 is narrowly tailored to a single incident and likely to lead to the disclosure of information relevant to Plaintiff's claim. Plaintiff's Motion as to Request Number 8 is granted.

## IV.  Conclusion

For the reasons provided, Plaintiff's Motion to Compel (#91) is granted in part and denied in part:

1. All production is limited to November 15, 2013, onward.
2. Defendants need only produce documents relevant to the inmate kitchen.
3. Defendants must produce documents responsive to Request Number 4, but may limit their search to the terms "infest, rodent, mice, cockroach, mouse, dropping, rat, insect, fecal, sanitation," with the modifier "and kitchen or dietary or food" and must search independently for the term "Byrd."
4. Defendants need not respond to Request Number 6.
5. Defendants must produce documents responsive to Request Number 7, but may limit their production to grievances and complaints filed after November 15, 2013, and do not need to again disclose Plaintiff's grievances and complaints.
6. Defendants must produce documents responsive to Request Number 8.

Defendants' must comply with this Order within 21 days of entry.

ENTERED this 7th day of February, 2020.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE
